1
2
3
4
5
6
7



FILED
CLERK, U.S DISTRICT COURT

JUL 21 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOSE GUZMAN SALCEDO, <br><br> Petitioner, <br><br> v. <br><br> D.L. OLLISON, Warden, <br><br> Respondent. | No. EDCV 06-1068-GPS (AGR) <br><br> ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |

Pursuant 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the magistrate judge's Report and Recommendation.  The Court agrees with the recommendation of the magistrate judge.

IT IS ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:  7/20/08

GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE GUZMAN SALCEDO,

Petitioner,

v.

D.L. OLLISON, Warden,

Respondent.

)
)
)
)
)
)
)
)
)
)

NO. EDCV 06-1068-GPS (AGR)

REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE

The Court submits this Report and Recommendation to the Honorable George P. Schiavelli, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.  For the reasons set forth below, the Magistrate Judge recommends the Petition for Writ of Habeas Corpus be denied.

///
///
///
///
///
///

# I.

## __SUMMARY OF PROCEEDINGS__

In September 2003, a San Bernardino County Superior Court jury convicted Petitioner of two counts of exhibiting a firearm in the presence of a peace officer, possession of a concealed firearm, assault on a peace officer with a semiautomatic firearm, assault with a deadly weapon, possession of a controlled substance with a firearm, and possession of a firearm in a school zone. (Petition at 2; Answer at 2.)  On March 11, 2004, Petitioner was sentenced to 20 years in prison.[1] (Petition at 2; Answer at 3.)  On October 11, 2005, the California Court of Appeal affirmed his conviction in an unpublished decision. (LD 6.)  On December 21, 2005, the California Supreme Court denied review without explanation. (LD 8.)

On July 1, 2005, Petitioner filed a state petition for writ of habeas corpus in the trial court, which the court denied on July 28, 2005, finding it was premature. (LD 14, 15.)  Petitioner filed two state petitions for writ of habeas corpus in the California Court of Appeal, which were denied on September 7 and 9, 2005, without explanation. (LD 10-13.)  Petitioner filed a state petition for writ of habeas corpus in the California Supreme Court, which was denied without explanation on August 2, 2006. (LD 16, 17.)

On September 27, 2006, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court in which he raised sixteen grounds:  (1 and 3) the trial court erred in failing to instruct the jury on lesser included offense; (2, 4, and 6) there was insufficient evidence on the assault of a peace officer with a semiautomatic weapon and the gun enhancement; (5) the trial court deprived Petitioner of any defense; (7 and 9) California's Three Strikes Law constitutes cruel and unusual punishment; (8 and 13) unreasonable search

---

[1]  The California Court of Appeal confirmed on direct appeal that the correct term was 20 years, not 18. (Lodged Document ("LD") 6 at 9.)

2

1   and seizure; (10) ineffective assistance of counsel; (11) the trial court erred in its

2   determination that Petitioner was competent to stand trial; (12) cumulative error;

3   (14) the trial court violated his rights under the Confrontation Clause in admitting

4   an 911 call to police; (15) the trial court violated his Sixth Amendment rights in

5   imposing consecutive sentences; and (16) the trial court violated his due process

6   rights in denying Petitioner's motion for a mistrial during the sanity phase.

7   (Petition at 5[2]; LD 16; LD 7.)

8        On December 21, 2006, Respondent filed an answer, admitting timeliness.

9   On January 23, 2007, the Court issued a minute order noting that Respondent

10  had failed to address Petitioner's 15th ground (consecutive sentences) and

11  ordered Respondent to file a supplemental answer.  On February 2, 2007,

12  Respondent filed a supplemental answer.  On April 6, 2007, Petitioner filed a

13  reply.

14       This matter was taken under submission and is now ready for decision.

15                                    II.

16                        **STATEMENT OF FACTS**

17       The California Court of Appeal decision on direct review did not summarize

18  the facts, stating they were "irrelevant to the issues addressed."  (LD 6 at 2.)  Nor

19  did Petitioner outline his version of the facts.  To the extent an evaluation of

20  Petitioner's claims for relief depends on an examination of the record, the Court

21  has made an independent evaluation of the record specific to Petitioner's claims

22  for relief.

23       As background, the following is a summary of Respondent's version of the

24  facts.  (Answer at 4-7.)

25

26       [2]  Petitioner incorporates his grounds by reference to his state pleadings;
     the Court has used Petitioner's California Supreme Court state habeas petition as
27  the source of Petitioner's first thirteen grounds; and the petition for review to the
     California Supreme Court as the source of the last three grounds.  (Petition at 5;
28  Answer at 4; LD 16; LD 7.)

                                    3

1   On March 10, 2002, the police responded to a 911 call reporting that

2   Petitioner was armed, at home, and not permitting his wife or children to leave.

3   Some of the police formed a perimeter around Petitioner's home, while two

4   deputies, in a marked patrol car, drove down the long driveway leading to

5   Petitioner's house.

6   Petitioner came out of the house, agitated, and yelling at deputies that they

7   were treating him like a criminal.  The police attempted to calm him down.  A few

8   minutes later, Petitioner's son came out of the house, Petitioner said, "See, he's

9   all right."

10   Petitioner pulled out a concealed black semiautomatic firearm, waved it in

11   the air, loaded it, and pointed it at one of the deputies.  After lengthy negotiations,

12   Petitioner surrendered.

13   The police executed a search warrant and found arms, ammunition, and

14   marijuana in Petitioner's home.

15   On September 19, 2002, the police drove to Petitioner's home to arrest

16   him.  They followed Petitioner who drove to a high school parking lot.  The police

17   activated their lights and siren, but Petitioner did not stop.  Petitioner rammed

18   their car.  Petitioner disobeyed police orders and reached for a large knife.  The

19   police pepper-sprayed him and arrested him.  They found arms and drugs in the

20   car.

21   **III.**

22   **STANDARD OF REVIEW**

23   A federal court may not grant a petition for writ of habeas corpus by a

24   person in state custody with respect to any claim that was adjudicated on the

25   merits in state court unless it (1) "resulted in a decision that was contrary to, or

26   involved an unreasonable application of, clearly established Federal law, as

27   determined by the Supreme Court of the United States"; or (2) "resulted in a

28   decision that was based on an unreasonable determination of the facts in light of

4

1   the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

2   *Woodford v. Visciotti*, 537 U.S. 19, 21, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)

3   (per curiam).

4       "'[C]learly established Federal law' . . . is the governing legal principle or

5   principles set forth by the Supreme Court at the time the state court rendered its

6   decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed.

7   2d 144 (2003). A state court's decision is "contrary to" clearly established

8   Federal law if (1) it applies a rule that contradicts governing Supreme Court law;

9   or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision

10  of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3,

11  8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002). A state court's decision cannot be

12  contrary to clearly established Federal law if there is a "lack of holdings from" the

13  Supreme Court on a particular issue. *Carey v. Musladin*, 127 S. Ct. 649, 654,

14  166 L. Ed. 2d 482 (2006).

15      Under the "unreasonable application" prong of section 2254(d)(1), a federal

16  court may grant habeas relief "based on the application of a governing legal

17  principle to a set of facts different from those of the case in which the principle

18  was announced." *Lockyer*, 538 U.S. at 76; *see also Woodford*, 537 U.S. at 24-26

19  (state court decision "involves an unreasonable application" of clearly established

20  federal law if it identifies the correct governing Supreme Court law but

21  unreasonably applies the law to the facts).

22      A state court's decision "involves an unreasonable application of [Supreme

23  Court] precedent if the state court either unreasonably extends a legal principle . .

24  . to a new context where it should not apply, or unreasonably refuses to extend

25  that principle to a new context where it should apply." *Williams v. Taylor*, 529

26  U.S. 362, 407, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

27      "In order for a federal court to find a state court's application of [Supreme

28  Court] precedent 'unreasonable,' the state court's decision must have been more

5

1   than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct.

2   2527, 156 L. Ed. 2d 471 (2003) (citation omitted).  "The state court's application

3   must have been 'objectively unreasonable.'" *Id.* (citation omitted); *see also Clark*

4   *v. Murphy*, 331 F.3d 1062, 1068 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003).

5          "Factual determinations by state courts are presumed correct absent clear

6   and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated

7   on the merits in a state court and based on a factual determination will not be

8   overturned on factual grounds unless objectively unreasonable in light of the

9   evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v.*

10  *Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *see also*

11  *Mitleider v. Hall*, 391 F.3d 1039, 1046-47 (9th Cir. 2004), *cert. denied*, 545 U.S.

12  1143 (2005).

13         In applying these standards, this Court looks to the last reasoned State

14  court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006).  To the

15  extent no such reasoned opinion exists, as when a state court rejected a claim in

16  an unreasoned order, this Court must conduct an independent review to

17  determine whether the decisions were contrary to, or involved an unreasonable

18  application of, "clearly established" Supreme Court precedent.  *Delgado v. Lewis*,

19  223 F.3d 976, 982 (9th Cir. 2000).  If the state court declined to decide a federal

20  constitutional claim on the merits, this Court must consider that claim under a *de*

21  *novo* standard of review rather than the more deferential "independent review" of

22  unexplained decisions on the merits authorized by *Delgado*. *Lewis v. Mayle*, 391

23  F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim

24  state court did not reach on the merits).

25                                  **IV.**

26                            **DISCUSSION**

27  **A.    GROUNDS ONE AND THREE:  Lesser Included Offense**

28  There is no clearly established Supreme Court law requiring the giving of a

6

1  lesser included offense instruction in noncapital cases.  In *Turner v. Marshall*, 63
2  F.3d 807 (9th Cir. 1995), *overruled on other grounds by Tolbert v. Page*, 182 F.3d
3  677 (9th Cir. 1999), the court noted that pursuant to *Beck v. Alabama*, 447 U.S.
4  625, 638, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980), "failure to instruct on a lesser
5  included offense in a *capital* case would be constitutional error if there were
6  evidence to support the instruction."  *Turner*, 63 F.3d at 818-19 (emphasis in
7  original).  However, "[t]here is no settled rule of law on whether *Beck* applies to
8  noncapital cases."  *Id.* at 819.  The Ninth Circuit has not specifically addressed
9  the issue of whether to extend *Beck* but "has declined to find constitutional error
10  arising from the failure to instruct on a lesser included offense in a noncapital
11  case."  *Id.* (citing to *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir.), *cert. denied*,
12  469 U.S. 838 (1984); *see also Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir.
13  1998) ("Under the law of this circuit, the failure of a state trial court to instruct on
14  lesser included offenses in a non-capital case does not present a federal
15  constitutional question").

16       According to *Turner*, there is an intercircuit split on the issue.  *Turner*, 63
17  F.3d at 819.  The Tenth and Eleventh Circuits have found no constitutional right
18  in noncapital cases, whereas the Third and Sixth Circuits have extended *Beck* to
19  noncapital cases; and the First and Seventh Circuits have applied *Beck* only "to
20  prevent a 'fundamental miscarriage of justice.'"  *Id.*  Finally, *Turner* held that "any
21  finding of constitutional error would create a new rule, inapplicable to the present
22  case under *Teague*."  *Id.*

23       This Court may not grant relief on a "claim that was adjudicated on the
24  merits in State court proceedings unless the adjudication of the claim resulted in
25  a decision that was contrary to, or involved an unreasonable application of,
26  clearly established Federal law, *as determined by the Supreme Court of the*
27  *United States*."  28 U.S.C. § 2254(d)(1) (emphasis added).  Such "clearly
28  established" Supreme Court precedent is absent.  *See Keeble v. United States*,

412 U.S. 205, 213, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973) (The Supreme Court has "never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense"). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (per curiam). Thus, "[a]lthough lower federal court and state court precedent may be relevant when that precedent illuminates the application of clearly established federal law as determined by the United States Supreme Court, if it does not do so, it is of no moment." *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005).

Petitioner was convicted of assault of a peace officer with a semiautomatic firearm. (LD 1 at 452); Penal Code § 245(d)2).[3] In addition, the jury also found true that Petitioner personally use a firearm in the commission of the assault. (LD 1 at 453); Penal Code § 12022.53(b). In Ground One, Petitioner argues that the judge should have instructed the jury on lesser offenses, although he does not name which ones. (LD 16 at 3-4.) He does state that the crime should have been charged as an infraction rather than as a felony. (*Id.* at 4.) In Ground Three, Petitioner argues that an instruction should have been given on "simple assault." (*Id.* at 8.)

As discussed above, these grounds fail to raise a federal question reviewable on habeas. *Windham*, 163 F.3d at 1006; *Turner*, 63 F.3d at 819. Petitioner cites no authorities to the contrary. His claims fail.

**B.     GROUNDS TWO, FOUR, AND SIX: <u>Insufficiency of the Evidence</u>**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

---

[3] Unless otherwise noted, all references to the Penal Code are to California's Penal Code.

8

1   crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct.

2   1068, 25 L. Ed. 2d 368 (1970).  "[T]he critical inquiry on review of the sufficiency

3   of the evidence to support a criminal conviction must be . . . to determine whether

4   the record evidence could reasonably support a finding of guilt beyond a

5   reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L.

6   Ed. 2d 560 (1979) (footnote omitted).  This inquiry does not require a court to

7   "'ask itself whether it believes that the evidence at the trial established guilt

8   beyond a reasonable doubt' [but] whether, after viewing the evidence in the light

9   most favorable to the prosecution, *any* rational trier of fact could have found the

10  essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19

11  (emphasis in original) (citations omitted).  A reviewing court must give "full play to

12  the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to

13  weigh the evidence, and to draw reasonable inferences from basic facts to

14  ultimate facts." *Id.* at 319.

15         Because no reasoned opinion exists addressing these three grounds (LD

16  13, 15, 17), the Court has conducted an independent review to determine

17  whether the state decisions were contrary to, or involved an unreasonable

18  application of, "clearly established" Supreme Court precedent. *Delgado*, 223

19  F.3d at 982.

20         In Grounds Four and Six, Petitioner argues there was insufficient evidence

21  to support his conviction of assault on a peace officer with a semiautomatic

22  firearm. (Petition at 9, 12.)  In Ground Two, Petitioner argues there was

23  insufficient evidence to support the jury's finding that he used a firearm in the

24  commission of assault on a peace officer with semiautomatic firearm. (*Id.* at 6.)

25         The next step in the inquiry is to examine "the elements of the criminal

26  offense as set forth by state law." *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir.

27  2005), *cert. denied*, 126 S.Ct. 1142 and 126 S. Ct. 1145 (2006).

28  ///

Penal Code § 245(d)(2) makes it a crime for a person to commit "an assault upon the person of a peace officer . . . with a semiautomatic firearm and who knows or reasonably should know that the victim is a peace officer . . . engaged in the performance of his . . . duties, when the peace officer . . . is engaged in the performance of his . . . duties."   According to the instruction given to Petitioner's jury, the following five elements had to be proven:  (1) Petitioner committed the assault with a semiautomatic firearm; (2) the victim was a peace officer; (3) at the time of the assault the peace officer was performing his duties; (4) Petitioner knew or should have known that the victim was a peace officer; and (5) Petitioner knew or should have known that the victim was performing his peace officer duties.  (LD 1 at 330.)

To convict Petitioner of assault, the following elements had to be proven: (1) Petitioner's act would probably and directly result in the application of physical force on the victim; (2) Petitioner was "aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of [his] act that physical force would be applied" to the victim; and (3) Petitioner had the "present ability to apply physical force" to the victim at the time of the act. However, it is not necessary that Petitioner actually inflicted any injury.  (*Id.* at 332-33.)

The term "peace officer" includes any sheriff or deputy sheriff. (*Id.* at 331.)

To find true that Petitioner used a firearm during the commission of the assault, Petitioner must have "intentionally displayed a firearm in a menacing manner." (*Id.* at 342.)  "Firearm" was defined as "any device designed to be used as a weapon from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion." (*Id.*)

On March 10, 2002, Daniel Futscher, a deputy sheriff, went to Petitioner's home.  (LD 2 at 87, 89.)  Futscher was wearing a sheriff's uniform, a gun belt, and body armor.  (*Id.* at 92.)  Futscher and his colleague, Deputy Gary Esmond,

1   drove down Petitioner's driveway, got out of their car, and tried to calm Petitioner

2   down. (*Id.* at 93-94.)  Esmond was also wearing a uniform and identified himself

3   as a sheriff to Petitioner. (*Id.* at 128.)  They spent about five minutes talking with

4   Petitioner, who was about 10 feet from them, through a fence. (*Id.* at 95-96.)

5   Petitioner also testified he knew they were police. (*Id.* at 319.)

6          While Futscher and another deputy named Zour tried to scale the fence to

7   assist yet another deputy named Nichols, Esmond yelled "gun." (*Id.* at 97.)

8   Futscher and Zour dropped back down off of the fence, and Futscher saw

9   Petitioner "pointing a black automatic firearm at Deputy Esmond." (*Id.*)  Petitioner

10  testified he pointed the gun at one of the officers. (*Id.* at 334.)  Esmond described

11  the weapon as a "black semiautomatic handgun." (*Id.* at 130.)  Petitioner testified

12  it was a semiautomatic. (*Id.* at 328.)  Esmond also saw Petitioner "rack" the

13  weapon, which means ready the gun to fire. (*Id.* at 131.)  Petitioner also testified

14  that he took a gun out. (*Id.* at 320.)  Petitioner then started "moving the weapon

15  back and forth at the other deputies who were standing, which would have been

16  me and Deputy Zour." (*Id.* at 98.)  Eventually, Petitioner dropped the gun and

17  later surrendered. (*Id.* at 132, 134.)

18         When Petitioner was taken to the police station on that same day, he

19  turned over to Sergeant Yoder a loaded Smith and Wesson nine millimeter

20  semiautomatic handgun. (*Id.* at 152, 154.)  Yoder interviewed Petitioner that day,

21  and Petitioner told Yoder he knew that the people who approached him at his

22  house that day were police officers. (*Id.* at 159.)  He also told Yoder he had

23  pulled a handgun out of his waistband and pointed it at the police officers. (*Id.*)

24  Petitioner also testified that the gun he gave to the police at the station was the

25  same gun he used earlier at the house. (*Id.* at 337-39.)

26         Thus, there was ample evidence that Petitioner committed the crime of

27  assault on a peace officer with a semiautomatic weapon, as well as ample

28  evidence that he used a firearm in the commission of the crime.  There was

1   evidence it was a semiautomatic weapon.  There was evidence he pointed it,

2   loaded, at police officers, and he knew they were police officers.  There was

3   evidence the police officers were performing their duties at the time of the

4   assault.

5        Nor does Petitioner explain in any way how the evidence was insufficient.

6   Petitioner's claims on these three grounds fail.

7        **C.    GROUND FIVE:  No Defense**

8        Petitioner argues the trial court deprived him "of any defense."  (LD 16 at

9   10.)  He claims the Information failed to provide "complete information of alleged

10  charge filed, 'assault with a deadly weapon, and great bodily injury.'"  (*Id.*)

11  Petitioner refers twice to Penal Code § 245(d)(2).  (*Id.*)  However, contrary to

12  Petitioner's assertion, subdivision (d)(2), with which Petitioner was charged, does

13  *not* include the language "deadly weapon" or "great bodily injury."  That language

14  is found in subdivision (a)(1) of the same section.  Therefore, to the extent

15  Petitioner is arguing that the charge under subdivision (d)(2) was incomplete, his

16  factual predicate is false.

17       Petitioner's claim fails.

18       **D.    GROUND SEVEN:  Three Strikes**

19       Petitioner appears to argue that his sentence under California's Three

20  Strikes Law was unconstitutional.  As Respondent points out, Petitioner was not

21  sentenced under Three Strikes.  (Answer at 18; LD 2 at 1088-93.)  His aggregate

22  sentence was 20 years, comprised of different terms on the various counts, none

23  of which was enhanced by Three Strikes.  (LD 2 at 1088-93.)

24       **E.    GROUNDS EIGHT AND THIRTEEN:  Unreasonable Search and**

25            **Seizure**

26       In *Stone v. Powell*, 428 U.S. 465, 481-82, 96 S. Ct. 3037, 49 L. Ed. 2d

27  1067 (1976), the Supreme Court held that when "the State has provided an

28  opportunity for full and fair litigation of a Fourth Amendment claim, the

1   Constitution does not require that a state prisoner be granted federal habeas

2   corpus relief on the ground that evidence obtained in an unconstitutional search

3   or seizure was introduced at his trial." (footnote omitted).  "The relevant inquiry is

4   whether petitioner had the opportunity to litigate his claim, not whether he did in

5   fact do so or even whether the claim was correctly decided."  *Ortiz-Sandoval v.*

6   *Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citation omitted).

7         Petitioner argues that his home was illegally searched on March 10, 2002.

8   (LD 16 at 20.)  However, he not only had an opportunity to litigate this claim, he

9   did so.  (LD 1 at 168 (indicating that a motion to suppress and a motion to quash

10   were denied).)  Nor does Petitioner argue otherwise.

11         Petitioner's claims fail.

12         **F.    GROUND TEN:  Ineffective Assistance**

13         To succeed on a claim of ineffective assistance of trial counsel, Petitioner

14   must demonstrate that his attorney's performance was deficient and that the

15   deficiency prejudiced the defense.  *Wiggins*, 539 U.S. at 521; *Strickland v.*

16   *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

17   Petitioner bears the burden of establishing both components.  *Williams*, 529 U.S.

18   at 390-91; *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 145 L. Ed. 2d

19   756 (2000).  Deficient performance is performance that is objectively

20   unreasonable under prevailing professional norms.  *Summerlin v. Schriro*, 427

21   F.3d 623, 629 (9th Cir. 2005) (citing *Strickland*, 466 U.S. at 688), *cert. denied*,

22   547 U.S. 1097 (2006).  Prejudice "focuses on the question whether counsel's

23   deficient performance renders the result of the trial unreliable or the proceeding

24   fundamentally unfair."  *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838,

25   122 L. Ed. 2d 180 (1993); *Williams*, 529 U.S. at 393 n.17.

26         To establish deficient performance, Petitioner must show his counsel

27   "made errors so serious that counsel was not functioning as the 'counsel'

28   guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687;

1    *Lankford v. Arave*, 468 F.3d 578, 583 (9th Cir. 2006), *cert. denied*, 128 S. Ct. 206

2    (2007).  "[C]ounsel is strongly presumed to have rendered adequate assistance

3    and made all significant decisions in the exercise of reasonable professional

4    judgment." *Strickland*, 466 U.S. at 690; *Yarborough v. Gentry,* 540 U.S. 1, 8, 124

5    S. Ct. 1, 157 L. Ed. 2d 1 (2003).  Only if counsel's acts and omissions, viewed as

6    of the time of counsel's conduct, were outside the "wide range" of professionally

7    competent assistance, will Petitioner meet this initial burden. *Kimmelman v.*

8    *Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986);

9    *Strickland*, 466 U.S. at 690.

10        If Petitioner makes this showing, he must then establish a "reasonable

11    probability that, but for counsel's unprofessional errors, the result of the

12    proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams*,

13    529 U.S. at 391.  The errors must be "so serious as to deprive the defendant of a

14    fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *see also*

15    *Williams*, 529 U.S. at 393 n.17 ("counsel's deficient performance renders . . . the

16    proceeding fundamentally unfair").  However, "an analysis focusing solely on

17    mere outcome determination, without attention to whether the result of the

18    proceeding was fundamentally unfair or unreliable, is defective." *Lockhart*, 506

19    U.S. at 369 (footnote omitted).

20        A court need not determine whether counsel's performance was deficient

21    before determining whether the defendant suffered prejudice as the result of the

22    alleged deficiencies. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an

23    ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

24    should be followed."); *Smith*, 528 U.S. at 286 n.14 (same).

25        Because no reasoned opinion exists addressing this ground (LD 13, 15,

26    17), the Court has conducted an independent review to determine whether the

27    state decisions were contrary to, or involved an unreasonable application of,

28    "clearly established" Supreme Court precedent. *Delgado*, 223 F.3d at 982.

1    Petitioner contends that his trial counsel was ineffective in failing to move

2    to set aside the charges.  (LD 16 at 17.)  Petitioner does not explain the basis for

3    any motion to dismiss the charges or any support for his argument.  *See James*

4    *v. Borg*, 24 F.3d 20, 26 (9th Cir.) ("Conclusory allegations which are not

5    supported by a statement of specific facts do not warrant habeas relief.") (citation

6    omitted), *cert. denied sub nom. James v. White*, 513 U.S. 935 (1994).

7    Petitioner's claim fails.

8    ## G.    GROUND ELEVEN: Competency

9    Petitioner apparently believes he was not competent to stand trial.  (LD 16

10   at 18.)  Petitioner appears to argue that the prosecutor breached a plea

11   agreement under which Petitioner pled not guilty by reason of insanity and was to

12   be committed to a state hospital for treatment.  (Petition, Ground Eleven.)

13   Petitioner has provided no evidence of such a plea agreement anywhere in the

14   record.  Petitioner was found sane at the time the crimes were committed.  (LD 2

15   at 1038-42.)

16   Petitioner's claim fails.

17   ## H.    GROUND TWELVE: Cumulative Error

18   Ground Twelve is unintelligible.[4]  *See Mihailoviki v. California*, 364 F.2d

19   808, 809 (9th Cir. 1966) (per curiam) (holding a ground to be "unintelligible and

20   wholly conclusory").  To the extent Petitioner is arguing cumulative error, he

21   offers no support for such an argument.  "[T]he combined effect of multiple trial

22

---

23   [4] Respondent claims that nine of the grounds are unintelligible.  (Answer at

24   17-18.)  Despite Petitioner's opportunity to clarify the grounds or rebut Respondent's characterization, he did not do so.  (*See* Reply.)

25   Ground 12 states:  "The condition in which, the Court Judge, and the People have subjected, and/or left Petitioner in, is much more greater, than the

26   Court defense, under harmless error, the cumulative error, has demonstrated, Due Process, and wanton, willful intentional denial of Federal, Civil, and

27   Constitutional Rights, by those whom 'Breached' the sworn allegiance, to uphold the United States Constitution, in Violation of International Laws, to recall Slavery

28   by inapplied effects of Treason, and the United States Constitutional Amendments 1st, 4th, 5th, 6th, 8th, 13th, 14th, 15th."  (LD 16 at 19.)

1  court errors violates due process where it renders the resulting criminal trial

2  fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing

3  *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S. Ct. 1038, 35 L. Ed. 2d 297

4  (1973)[5]).  "The cumulative effect of multiple errors can violate due process even

5  where no single error rises to the level of a constitutional violation or would

6  independently warrant reversal." *Id.* (citation and footnote omitted).  Petitioner

7  has not shown cumulative error.

8          Petitioner's unsupported claim of cumulative error fails.

9  **I.       GROUND FOURTEEN: Confrontation Clause**

10         In *Crawford v. Washington*, 541 U.S. 36, 61, 124 S. Ct. 1354, 158 L. Ed. 2d

11 177 (2004), the Supreme Court held that under the Confrontation Clause of the

12 Sixth Amendment, testimonial, out-of-court statements are inadmissible in a

13 criminal proceeding unless the witness was unavailable to testify and the

14 defendant had a prior opportunity for cross-examination.  Only testimonial

15 statements are subject to exclusion under the Confrontation Clause; "[w]here

16 nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design

17 to afford the States flexibility in their development of hearsay law." *Id.* at 68; *see*

18 *also Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 2273, 165 L. Ed. 2d

19 224 (2006) ("Only [testimonial] statements . . . cause the declarant to be a

20 'witness' within the meaning of the Confrontation Clause").

21

22         [5] In *Chambers*, the defendant was accused of murdering a police officer
   named Liberty.  A person named McDonald confessed that he killed Liberty but
23 later recanted his confession. *Chambers*, 410 U.S. at 287-88.  The trial court
   denied Chambers's motion to treat McDonald as an adverse witness at
24 Chambers's trial. *Id.* at 291-92.  The trial court also sustained hearsay objections
   when three witnesses tried to testify that McDonald had admitted to them that he
25 had shot Liberty. *Id.* at 292-93.  The Supreme Court concluded that the trial
   court's error in refusing to permit the defense to treat McDonald as an adverse
26 witness had to be viewed "in conjunction with the trial court's refusal to permit
   [Chambers] to call other witnesses." *Id.* at 298.  The court was careful to point
27 out that it "establish[ed] no new principles of constitutional law," only "that under
   the facts and circumstances of this case the rulings of the trial court deprived
28 Chambers of a fair trial." *Id.* at 302-03.

1    In *Whorton v. Bocking*, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007), the

2   Supreme Court clarified that *Crawford* "eliminat[es] . . . Confrontation Clause

3   protection against the admission of unreliable out-of-court nontestimonial

4   statements" and that "the Confrontation Clause has no application to such

5   statements and therefore permits their admission even if they lack indicia of

6   reliability." *Id.* at 1183; *see also United States v. Larson*, 495 F.3d 1094, 1099

7   n.4 (9th Cir. 2007).

8                    **1.    California Proceedings**

9    The police came to Petitioner's home on March 10, 2002, in response to an

10   anonymous 911 call from a friend of Petitioner's wife.  (LD 2 at 288; LD 1 at 669.)

11   Detective Futscher heard the substance of that call, which indicated that

12   Petitioner had been carrying weapons wherever he went, that he had weapons in

13   his home, that he had a bulletproof vest, and that he was not letting his family

14   leave the house.[6]  (*Id.*)  Over defense objections, Exhibit 12A, a transcript of the

15   911 call was admitted and witnesses were permitted to discuss the substance of

16   the call.  (LD 2 at 288, 290; LD 1 at 666-70.)  The trial court indicated it would

17   probably admit the transcript, not for the truth of the matter asserted, but to show

18   why the police responded the way they did.  (LD 2 at 280.)

19                    **2.    Discussion**

20   Petitioner argues that the admission of the call transcript violated the

21   Confrontation Clause.  (LD 7 at 4.)  Petitioner argues that the call was testimonial

22   under *Crawford* because (1) it was not made at the time of the crime; (2) the

23   caller was a third-party, not a victim under stress; and (3) it was not made at the

24   place of the crime.  (LD 7 at 11-12.)  Instead, the call was made in anticipation

25   that the police would go to Petitioner's home, arrest him, initiate criminal

26   proceedings, and that what the caller said would later be used at trial.  (*Id.* at 12.)

27   _____

28            [6]  Petitioner was not charged with holding his family against their will.

17

1   Petitioner also argues that the admission of the call was prejudicial because it

2   "implied petitioner was guilty of the charges against him and undermined the

3   credibility of petitioner's insanity defense. The evidence undermined the defense

4   theory that Mr. Salcedo believed he was protecting his family from attack and was

5   in fear when the officers surrounded his home." (*Id.*)

6        The California Court of Appeal decision, which is the last reasoned

7   decision under *Davis*, concluded that the admission did not violate *Crawford*

8   because the call was admitted only to show the reasonableness of what the

9   police did, not for the truth of the matter. (LD 6 at 4.) The state court specifically

10  referred to a sentence in *Crawford* that says that the Confrontation Clause "does

11  not bar the use of testimonial statements for purposes other than establishing the

12  truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9; (LD 6 at 4.)

13       The Court of Appeal's decision was a reasonable application of *Crawford*.

14  In addition, Petitioner's argument that the statements in the call were testimonial

15  is strained. He attempts to distinguish a victim's 911 call from a third-party's call,

16  but those distinctions do not render the statements in the call testimonial. In

17  *Davis v. Washington*, the Supreme Court held that a victim's responses to police

18  questions during a 911 call were not testimonial. According to *Davis*,

19  "Statements are nontestimonial when made in the course of police interrogation

20  under circumstances objectively indicating that the primary purpose of the

21  interrogation is to enable police assistance to meet an ongoing emergency. They

22  are testimonial when the circumstances objectively indicate that there is no such

23  ongoing emergency, and that the primary purpose of the interrogation is to

24  establish or prove past events potentially relevant to later criminal prosecution."

25  126 S. Ct. at 2273-74 (footnote omitted). Here, even though the victim

26  (ostensibly Petitioner's wife) did not make the call, the call was made to alert the

27  police to an ongoing emergency. The police were not investigating anything with

28  ///

18

1  the objective of proving that a crime had been committed earlier.  These were not

2  past events, but an ongoing problem at Petitioner's home.

3  　　　　Even assuming the statements made by the caller were testimonial,

4  Petitioner was not prejudiced.  *See Brecht v. Abrahamson*, 507 U.S. 619, 638,

5  113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (any error is harmless unless it had

6  "substantial and injurious effect or influence in determining the jury's verdict").

7  Contrary to Petitioner's assertion, the call did not undermine his insanity defense.

8  If anything, it was helpful as the caller stated that Petitioner was "mentally

9  unstable." (LD 1 at 667.)  In addition, any implication that Petitioner was guilty of

10  the charges against him was cumulative as there was ample evidence, as shown

11  earlier in the discussion of Grounds Two, Four, and Six, to convict Petitioner

12  without the admission of the 911 call.  *See Delaware v. Van Arsdall*, 475 U.S.

13  673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (The factors in determining

14  whether the error was harmless "include the importance of the witness' testimony

15  in the prosecution's case, whether the testimony was cumulative, the presence or

16  absence of evidence corroborating or contradicting the testimony of the witness

17  on material points, the extent of cross-examination otherwise permitted, and, of

18  course, the overall strength of the prosecution's case.") (citation omitted).  Here,

19  the prosecution's case was very strong, and the importance of the 911 caller's

20  statements in the prosecution's case was relatively minor.  Its main purpose was

21  background so the jury could understand why the police responded.

22  　　　　Petitioner's claim fails.[7]

23  **J.     GROUND FIFTEEN: Consecutive Sentences**

24  　　　　A judge cannot "impose a sentence above the statutory maximum based

25

26  　　　　[7] Any claim by Petitioner that the 911 statements were inadmissible as
hearsay under California law is not cognizable under habeas review.  *See Estelle*
27  *v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("it is
not the province of a federal habeas court to reexamine state-court
28  determinations on state-law questions").

on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Cunningham v. California*, 127 S. Ct. 856, 860, 166 L. Ed. 2d 856 (2007); *United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005); *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), citing to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

The trial court imposed consecutive sentences on Counts 7, 10, and 11 pursuant to Penal Code § 12022.1(e).[8] (LD 2 at 1091-92.) Petitioner argues that the court imposed consecutive sentences "based on facts not proven to a jury beyond a reasonable doubt." (LD 7 at 17.) However, Petitioner admitted that he committed these offenses while released from custody within the meaning of Penal Code § 12022.1(a)(1).[9] (LD 2 at 284-85, 532-33.) The trial court was therefore required to impose consecutive sentences under subdivision (e). (*See also* LD 2 at 1085.) Because of Petitioner's admission, the consecutive sentence cannot run afoul of *Blakely* or *Cunningham*.

Petitioner's claim fails.

**K.    GROUND SIXTEEN: Motion for Mistrial**

"[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *Spencer v. Texas*, 385 U.S. 554, 563-564, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967). A jury's exposure to facts not in evidence is subject to harmless error analysis. *Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir. 1995).

During the sanity phase of Petitioner's trial, the defense called David

---

[8] Section 12022.1(e) provides "If the person is convicted of a felony for the primary offense, is sentenced to state prison for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be consecutive to the primary sentence."

[9] Petitioner was on bail after the March incident when he committed the September crimes. (LD 2 at 284.)

1   Christensen, a psychologist appointed by the trial court to evaluate Petitioner.

2   (LD 2 at 584-86.) Christensen testified that Petitioner was "suffering from a major

3   mental disorder, probably a thought-disorder, possibly a delusional disorder." (*Id.*

4   at 591.) Christensen also concluded that Petitioner was not sane at the time of

5   the crimes. (*Id.* at 592.)  During cross, the prosecutor asked Christensen for an

6   example of someone other than Petitioner who does not understand the nature

7   and quality of his acts. (*Id.* at 596.) The court overruled the defense's relevancy

8   objection. (*Id.* at 598.) The witness then testified:

9           I guess the one that comes to my mind, the soonest is a 26-year-old

10          who had a long history of suffering from schizophrenia, paranoid

11          schizophrenia. And he was in a day treatment program. And he

12          had, as part of their program, had been going into the community,

13          and he went bowling and he won a – * * * He won a small trophy.

14          And he brought the trophy home after the day treatment program

15          and showed it to his mother who was talking on the phone. [¶] He

16          got it in his head that she was conspiring against him and not paying

17          enough attention to him and was lying to him by not talking to him, so

18          he shot her in the head. And the result was that he was found not

19          guilty by reason of insanity and spent several years in Patton.

20  (*Id.* at 598-99.)

21          Shortly after the above testimony, the defense moved for a mistrial, which

22  the court denied. (*Id.* at 600-01.) The court struck the "last answer" and

23  instructed the jury to ignore it.[10] (*Id.* at 606.)

24          Petitioner argues that the doctor's testimony "implied persons found not

25  guilty by reason of insanity are released from custody after only serving a brief

26  commitment." (LD 7 at 19-20.)

27  _____

28          [10] The "last answer" was the witness's confirmation that the boy thought
    his shooting his mother was a reasonable action. (*Id.* at 600.)

21

The California Court of Appeal's decision, which is the last reasoned decision under *Davis*, concluded that Petitioner was not harmed by the witness's testimony. (LD 6 at 7-8.) First, factually, the court disagreed with Petitioner's assertion. According to the court, Christensen did not state, or even imply, that people found not guilty by reason of insanity are released from custody after serving a brief commitment. Second, the jurors were properly instructed on the legal consequences of a finding of insanity. (*Id.* at 8.)

The state decision was not unreasonable. Its factual finding was supported by the record. *See Miller-El*, 537 U.S. at 340 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary"). Nor has Petitioner presented any evidence rebutting the state court's finding. The doctor did not state that all people found not guilty by reason of insanity serve only brief commitments, nor did he imply it. He said only that this one person in his example served "several years" in a mental institution. In addition, the jury was instructed about the consequences of a finding of insanity:

> A verdict of "not guilty by reason of insanity" does not mean the
> defendant will be released from custody. Instead, he will remain in
> confinement while the courts determine whether he has fully
> recovered his sanity. If he has not, he will be placed in a hospital for
> the mentally disordered or other facility, or in outpatient treatment,
> depending upon the seriousness of his present mental illness. [¶]
> Moreover, he cannot be removed from that placement unless and
> until the court determines and finds the defendant's sanity has been
> fully restored, in accordance with the law of California, or until the
> defendant has been confined for a period equal to the maximum
> period of imprisonment which could have been imposed had he been
> found guilty.

(LD 1 at 611.)

1    In addition, the jury was instructed that what happens to Petitioner if he

2  was adjudicated insane "is not to be considered by you in determining whether

3  the defendant was sane or insane at the time he committed his crimes.  Do not

4  speculate as to if, or when, the defendant will be found sane. * * * [Y]ou must

5  assume that those officials charged with the operation of our mental health

6  system will perform their duty in a correct and responsible manner, and that they

7  will not release this defendant unless he can be safely returned into society."  (*Id.*)

8    Petitioner's claim fails.

## V.

## **RECOMMENDATION**

11    For the reasons discussed above, it is recommended that the District Court

12  issue an Order (1) adopting this Report and Recommendation; and (2) directing

13  that judgment be entered denying the Petition and dismissing this action with

14  prejudice.

16  DATED: January 30, 2007

ALICIA G. ROSENBERG
United States Magistrate Judge

23

1

## NOTICE

2      Reports and Recommendations are not appealable to the Court of

3  Appeals, but are subject to the right of any party to file Objections as provided in

4  the Local Rules Governing Duties of Magistrate Judges, and review by the

5  District Judge whose initials appear in the docket number.  No Notice of Appeal

6  pursuant to the Federal Rules of Appellate Procedure should be filed until entry of

7  the Judgment of the District Court.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28